**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Milton Munoz Caraguay,<br><br>       Petitioner,<br><br>    -v-<br><br>Anthony Larocco, *Warden, Nassau County Correctional Center*, Todd Lyons, *Acting Director, U.S. Immigration and Customs Enforcement*, Pamela Bondi, *Attorney General*, Kristi Noem, *Secretary of Homeland Security,*<br><br>       Respondents. | 2:26-cv-569<br>(NJC) |

**MEMORANDUM AND ORDER**

On February 2, 2026, Milton Munoz Caraguay filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2243 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Pet, ECF No. 1.) He filed an amended Petition later that day. (Am. Petition for Writ of Habeas Corpus ("Am. Petition"), ECF No. 5.) The Petition argues that ICE has detained Mr. Munoz Caraguay without notice or an opportunity to be heard since February 1, 2026, in violation of his rights to procedural and substantive due process under the Fifth Amendment to the U.S. Constitution. The Petition asks the Court to assume jurisdiction and provide the following relief: (1) a declaration that the detention of Mr. Munoz Caraguay is unlawful; (2) an order granting Mr. Munoz Caraguay's release under 28 U.S.C. § 2243, or in the alternative, a bail hearing in which this Court orders Mr. Munoz Caraguay's release through the Court's inherent authority under *Mapp v. Reno,* 241 F.3d 221 (2d. Cir 2001) pending adjudication

of the Petition; (3) attorneys' fees and costs under the Equal Access to Justice Act; and (4) any other order this Court deems just and proper. (Petition at 8.)[1]

Respondents are government officials named in their official capacities: (1) Anthony J. LaRocco, the Nassau County Sheriff and Warden of Nassau County Correctional Facility; (2) Todd Lyons, the Acting Director of U.S. Immigration and Customs Enforcement; (3) Pamela Bondi, the United States Attorney General; and (4) Kristi Noem, the Secretary of the United States Department of Homeland Security ("DHS"). Lyons, Bondi and Noem, who are together referred to as the "Federal Respondents," oppose the Petition.[2]

The Federal Respondents rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026). (Response to Order to Show Cause ("Opposition"), ECF No. 14 at 1.) Relying on those arguments, the Federal Respondents contend here that ICE's detention of Mr. Munoz Caraguay falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (*Id*.) According to the Federal Respondents, Section 1225(b)(2) requires Mr. Munoz Caraguay's detention, and he has

---

[1] The Amended Petition also seeks an order prohibiting Mr. Munoz Caraguay's transfer outside of New York and an order requiring Respondents to show cause why the Petition should not be granted within three days. (Am. Pet. at 8.) The Court has effectively granted such relief through the issuance of a February 1, 2026 Order to Show Cause, which required Respondents to provide their response to the Petition by February 3, 2026, and prohibited Respondents from transferring Mr. Munoz Caraguay outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 8.)

[2] LaRocco has not entered an appearance in this case. Petitioner has not yet served him. However, it is undisputed that the Federal Respondents have the power to bring Mr. Munoz Caraguay before this Court for the hearing on his Petition as well as the legal authority to provide the requested relief of release.

no right to any additional notice or opportunity to be heard under the Due Process Clause. The Federal Respondents' position is that any noncitizen who entered the United States without authorization at any time in the past is subject to mandatory detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

The Federal Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026). This Court's decision in *Rodriguez-Acurio* is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22.  Here, Mr. Munoz Caraguay is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him on February 1, 2026, Mr. Munoz Caraguay had been living in the interior of the United States, specifically New York, since he was paroled into the country under 8 U.S.C. § 1182(d)(5)(A) on or around December 22, 2022, and has since applied for asylum and withholding of removal. (*See* Opposition Ex. A ("Form I-94"), ECF No. 14-2 at 2; Am. Pet. ¶ 17.)[3]

The Federal Respondents offer no new arguments to support their position in *Rodriguez-Acurio* that *any* non-citizen encountered by ICE in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Opposition at 1–2.) The vast majority of courts throughout this District, Circuit, and even the country have rejected the Federal

---

[3] When paroled into the United States, Mr. Munoz Caraguay provided an address in Queens, and the December 14, 2023 Notice to Appear in removal proceedings is addressed to him at the Queens address. (Opposition, Ex. B, ECF No. 14-2 at 5.)

Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

Of course, the decisions of other district courts are not binding on this Court, and this Court has conducted its own careful assessment of the law and the facts. Based on that review, this Court continues to conclude, as set forth in *Rodriguez-Acurio*, that the Federal Respondents' interpretation of Section 1225(b)(2) is unsupported by the statutory text.

Accordingly, ICE's detention of Mr. Munoz Caraguay is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Munoz Caraguay has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding the Federal Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. *See* Opposition at 1; *see also Rodriguez-Acurio*, 2025 WL 3314420 at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[4] ICE's detention of Mr. Munoz

---

[4] Although the Federal Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

4

Caraguay without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, ICE's detention of Mr. Munoz Caraguay since February 1, 2026, violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Munoz Caraguay without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Munoz Caraguay because the Federal Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 1, 2026. Finally, the Federal Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Munoz Caraguay without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, nothing in the record before this Court suggests that Mr. Munoz Caraguay poses a risk of danger or flight. And of course, no one at DHS—whether at ICE or a different DHS subdivision—made any individualized determination

5

that Mr. Munoz Caraguay poses a risk of danger or flight prior to ICE's arrest and detention of him on February 1, 2026.

As a threshold matter, Mr. Munoz Caraguay has absolutely no criminal record whatsoever and the Federal Respondents do not even argue that he does. Rather, they appear to suggest that he poses a flight risk by relying on the declaration of ICE Deportation Officer Geraldo Paoli, which includes hearsay statements based not on personal knowledge, but on information gathered from unidentified sources and persons. (*See* Decl. of Geraldo Paoli ("Paoli Decl."), ECF No. 14-1 ¶ 1.) However, a close review of the factual record fails to support any suggestion that Mr. Munoz Caraguay poses a flight risk—or that anyone at DHS or ICE made such a determination prior to detaining Mr. Munoz Caraguay on February 1, 2026.

The Court makes the following factual findings pertinent to this issue. Mr. Munoz Caraguay has never failed to appear at an immigration court proceeding. DHS served Mr. Munoz Caraguay with a December 14, 2023 Notice to Appear, which required him to appear in immigration court in New York City on October 16, 2024. (Opposition, Ex. B, ECF No. 14-2 at 5.) However, Paoli concedes that this court date was first rescheduled to January 24, 2026 and then, on December 9, 2025, was entirely taken off the calendar. (Paoli Decl. ¶ 6 n.1.) Thus, there is no pending immigration court date for Mr. Munoz Caraguay. Moreover, counsel for Mr. Munoz Caraguay verifies that the immigration judge who was handling Mr. Munoz Caraguay's removal proceedings was fired in December 2025 and that no new immigration court date has been provided to Mr. Munoz Caraguay. (Am. Pet ¶ 20.)

Paoli asserts, without personal knowledge, that Mr. Munoz Caraguay did not appear at an ICE check-in on December 13, 2024, but even that assertion is belied by the record. Paoli does not set forth facts showing his personal knowledge that ICE scheduled and notified Mr. Munoz

Caraguay of a December 13, 2024 check-in or that Mr. Munoz Caraguay failed to appear. (Parolia Decl. ¶ 9.) Rather, the records Paoli attaches to his declaration show that DHS failed to provide Mr. Munoz Caraguay notice of any December 13, 2024 ICE check-in. Paoli attaches a Form I-220A Order of Release on Recognizance ("ROR") dated December 14, 2023, which is signed by an ICE officer and which released Mr. Munoz Caraguay on his own recognize on certain conditions. (Opposition, Ex. D, ECF No. 14-2 at 11.) It instructs him to report to a "Duty Officer," without specifying whether the report is in writing or in person and indicates that the check-in date and time are provided on a *separate* Form I-831. (*Id*.) However, the I-831 Form attached to the Paoli Declaration instructs Mr. Munoz Caraguay to report to the ICE ERO New York Field Office at 26 Federal Plaza in New York, New York *without including any date or time* for the check-in. (*Id*. at 15.) Nothing in the record shows that ICE actually scheduled or notified Mr. Munoz Caraguay that he was to check-in with ICE at that location on December 13, 2024, in other words, one year from the date of the ROR. And nothing in the record shows that Mr. Munoz Caraguay failed to appear for any such ICE check-in.

Moreover, to be clear, nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Munoz Caraguay presented a risk of danger or flight prior to Paoli's arrest and detention of him on February 1, 2026. Rather, the Federal Respondents seek to rely on Mr. Munoz Caraguay's purported failure to appear for an ICE check-in as a post hoc rationalization for their decision to arrest and detain him on February 1, 2026. Mr. Paoli does not attest that Mr. Munoz Caraguay's ROR was canceled for alleged failure to appear at the December 13, 2024 check-in *or* that he knew of any purported cancellation *before* he arrested Mr. Munoz Caraguay. (*See generally* Paoli Decl.) Rather, Paoli arrested Mr. Munoz Caraguay in Freeport, New York and then transported him to the Nassau County Jail in East Meadow, New

7

York for "processing," and only "*[a]t that time*, [Mr. Munoz Caraguay] was provided oral and written notification that his Order of Release on Recognizance was cancelled for failure to comply with the conditions of his release." (*Id*. ¶ 12 (emphasis supplied).) Finally, even the record provided by Paoli to purportedly show that the ROR was cancelled after Mr. Munoz Caraguay was detained does not identify the condition of release that Mr. Munoz Caraguay is accused of violating or the facts allegedly supporting the cancellation. (Opposition, Ex. F, ECF No. 14-2 at 19.) Moreover, it was only when Mr. Munoz Caraguay was already in jail for "processing" that ICE served him with an arrest warrant, as shown by the face of the warrant, which indicates that it was served on Mr. Munoz Caraguay in East Meadow, New York—not in Freeport, where he was arrested. (*Id*., Ex. E, ECF No. 14-2 at 17.)

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and the Federal Respondents' failure to demonstrate that Mr. Munoz Caraguay's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—the Federal Respondents' detention of Mr. Munoz Caraguay with no notice or opportunity to be heard, much less a pre-deprivation, individualized determination by a DHS officer that he poses a safety or flight risk, violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Munoz Caraguay was unlawful from its inception, notwithstanding the Federal Respondents' efforts at post-hoc rationalization. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) ("The Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation."); *Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining the Federal Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Munoz Caraguay from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Munoz Caraguay is not subject to mandatory detention under Section 1225(b)(2). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Munoz Caraguay is not rendered meaningless.

## CONCLUSION

Accordingly for all of the reasons explained in this Memorandum and Order and set forth in this Court's prior decision in *Rodriguez-Acurio*, the Amended Petition is granted in part. ICE's detention of Mr. Munoz Caraguay since February 1, 2026, was unlawful at its inception as it is based on the Federal Respondents' position that any noncitizen who entered the United States without authorization at any time in the past is subject to mandatory detention under 8 U.S.C.

§ 1225(b)(2). The Federal Respondents must release Mr. Munoz Caraguay immediately.

Additionally, pending the issuance of any final removal order against Mr. Munoz Caraguay, the

Federal Respondents are enjoined from denying him bond in any subsequent proceeding on the

basis that he must be detained pursuant to 8 U.S.C. § 1225(b)(2), absent a change in relevant

circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under

the Equal Access to Justice Act set forth in the Petition. Mr. Munoz Caraguay may file an

application for attorney's fees and costs incurred in pursuing this action by April 4, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr.

Munoz Caraguay the requested relief of immediate release, including arguments that the

detention violates the Fifth Amendment right to substantive due process, are now moot and

unnecessary to resolve. Similarly, the requested alternative relief in the form of a bail hearing

before this Court is also dismissed as moot.


Dated: Central Islip, New York
       February 4, 2026


                                        */s/ Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge